COCKS-CLARK ENGRAVING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6604.    Promulgated October 4, 1927.

1. A corporation the business of which is acquired through the reputation of its principal stockholders as photo-engravers of exceptional skill and ability, who devote their entire time to the affairs of the corporation, and the capital of which is invested in tools and equipment and materials used by the stockholders in the rendition of services, is entitled to personal service classification, even though a staff of assistants is employed.

2. Capital invested in tools and equipment used by the principal owners in performing personal services is not a material income-producing factor.

3. A corporation engaged in producing and selling an article whose value arises from the performance thereon of personal services requiring a high degree of artistic skill and ability, which article is valuable to him for whom it is especially prepared but of no value to others, is not producing and selling merchandise or commodities, but is selling personal services. Where the principal stockholders perform or supervise all the work entering into the services offered for sale, the corporation is not "trading" in the services of others although a part of the physical detail work be performed by assistants to the principal stockholders. Such a corporation is not "trading as a principal" within the meaning of the statute.

*W. F. Denious, Esq.,* and *Montgomery R. Smith, Esq.,* for the petitioner.

*A. H. Fast, Esq.,* for the respondent.

This an appeal from the determination by the Commissioner of a deficiency in income and profits taxes for the calendar years 1919, 1920, and 1921, amounting to $4,751.19, $5,745.53, and $2,892.50, respectively. Petitioner alleges that the Commissioner erred in denying it classification as a personal service corporation; in refusing special assessment under sections 327 and 328 of the 1918 and 1921 Revenue Acts; and in disallowing the deduction of certain items of depreciation. At the hearing the respondent confessed error as to the third allegation and petitioner abandoned its claim for special assessment.

FINDINGS OF FACT.

Petitioner is a Colorado corporation with its principal office in Denver, Colo., and is and during the taxable year was engaged exclusively in the business of photo-engraving.

The process of photo-engraving employed by petitioner was as follows: The subject to be reproduced is photographed and conformed

to the size desired. By the "old wet-plate process" a negative is made upon glass and transferred to a plate of either zinc or copper by the use of a solution of either enamel or ink. If the plate is enameled the print is then baked in, and if inked it is "topped," so that the plate may be etched. The plate is then etched (with nitric acid or perchloride of iron, dependent upon whether zinc or copper is used) to the printing depth, so that it may be clearly reproduced on a letter press. If it is to be used for type-high printing the plate is mounted. The surplus metal is "routed" or cut away, and the plate, if mounted, is packed upon a base of metal or wood type-high, and carried through a finishing or proving process. After the correction of any imperfections that may have appeared the plate is proved on a hand press and a proof of the engraving is submitted to the customer for approval.

The amount of capital stock of petitioner was the same during the taxable years as it was 'upon organization. It consisted of 5,000 shares, par value $1 each, and in 1919 was distributed as follows:

|  | Shares. |
|---|---|
| William M. Cocks | 2, 448 |
| Charles A. Clark | 2, 448 |
| Mrs. William M. Cocks | 1 |
| Mrs. Charles A. Clark | 1 |
| William B. McNulty | 2 |

McNulty was an employee of petitioner and the other two stockholders, holding one share each, were the wives of Cocks and Clark, respectively. McNulty left the employ of petitioner at the close of 1919 and his two shares of stock were transferred one share each, to Cocks and Clark, so that in 1920 and 1921 all the stock was held by them, with the exception of the two shares held by their wives. At all times during the taxable years Cocks and Clark were the real owners of all the stock. Clark was president and Cocks vice president of the corporation, and both devoted all their time exclusively to the business. Petitioner derived no income from any source other than its business of photo-engraving.

Cocks and Clark have been engaged in the photo-engraving business for 33 and 35 years, respectively, and were thoroughly familiar with every phase of the work. Each enjoys a reputation for exceptional skill and ability in this class of work. Cocks was in personal charge of transferring the negatives to the metal—the etching, the routing, and the blocking, and Clark had personal charge of the photographing, finishing, and proofing, and also attended to the office and consulted with customers. During the taxable years petitioner had from 12 to 14 employees, none of whom were skilled photo-engravers, with salaries ranging from $6 to $40 per week. In addition to a janitor, errand boy, bookkeeper, and stenographer, there

were employed two photographers, who served as assistants to Clark and whose duties were to make copies of the subject to be reproduced, which required familiarity with the work but no especial skill in photo-engraving; two etchers whose duties were to assist Cocks in the copper and zinc etching; one apprentice; one assistant to Clark in the finishing and proofing of plates; and four artists who made up designs and drawings to be later photographed and reproduced. All the work pertaining to the photo-engraving was either performed or supervised by Cocks or Clark in person, and none of the employees was capable of doing the work without their assistance. The employees were desirable, but not essential to the business, which could have been conducted on a small scale by Cocks and Clark alone. No salesman or solicitors were employed. All customers transacted their business with Cocks or Clark, whose advice was frequently sought, and they often suggested and developed ideas in cuts, drawings and designs for customers. The skill and ability of Cocks and Clark, their advice, counsel and personal service to customers, and their reputation as the highest class of engravers in that part of the country, were responsible for and produced all the business received by petitioner.

Petitioner carried no stock of engravings for sale, all work being done on special orders. During each of the taxable years it carried a small stock of supplies merely as a matter of convenience. Sales were made at a lump-sum price for the finished product and charges were not made for material independently of service and advice. The machinery and equipment were increased in amount in the years 1920 and 1921, by reason of the purchase of some etching machines to replace old ones that had been leased. The new machines were purchased to satisfy a sense of pride and not because there was any advantage in owning rather than leasing them. All business was done on a 30-day payment basis, which was considered cash in the locality and trade. The cash balance carried was not necessary to the conduct of the business, but existed chiefly because Cocks and Clark withdrew only such amounts as they required. This item was always largest at the close of the year, withdrawals in large amounts being made at the first of each year. In 1919 Cocks and Clark each drew a salary of $3,900, and in each of the years 1920 and 1921 they each drew a salary of $5,200. During all the years each could have obtained $10,000 per year in the employ of other photoengravers. The small amount of borrowed money shown on the books as bills payable, and paid off in 1920 was not necessary to the conduct of the business in the taxable year. The assets and liabilities at the beginning and close of each of the taxable years were:

|  | Dec. 31, 1918 | Dec. 31, 1919 | Dec. 31, 1920 | Dec. 31, 1921 |
|---|---|---|---|---|
| **ASSETS** |  |  |  |  |
| Cash | $1,676.71 | $7,595.90 | $8,876.95 | $5,660.69 |
| Accounts receivable | 5,932.45 | 8,833.15 | 6,097.76 | 7,327.19 |
| Raw material | 2,603.65 | 2,378.80 | 3,120.83 | 3,872.69 |
| Machinery and equipment | 4,486.49 | 5,201.94 | 9,677.36 | 13,417.34 |
|  | 14,699.30 | 24,009.79 | 27,772.90 | 30,277.91 |
| **LIABILITIES** |  |  |  |  |
| Bills payable | 1,600.00 | 500.00 | 500.00 | ---------- |
| Accounts payable | 2,428.68 | 2,169.66 | 2,318.30 | 6,040.44 |
| Capital stock | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Surplus | 5,670.62 | 16,340.13 | 19,954.60 | 19,237.47 |
|  | 14,699.30 | 24,009.79 | 27,772.90 | 30,277.91 |

## OPINION.

VAN FOSSAN: Respondent having confessed error in denying the depreciation deduction, and petitioner having abandoned its claim for special assessment, we have to consider only the question of whether or not petitioner was a personal service corporation within the meaning of the Revenue Acts of 1918 and 1921.

Section 200 of the Revenue Acts of 1918 and 1921, so far as material, provides:

The term "personal service corporation" means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include * * * any corporation 50 per centum or more of whose gross income consists * * * of gains, profits, or income derived from trading as a principal * * *.

In considering those elements which are essential and must be co-existent to bring any corporation within the personal service classification defined by the statute, we have heretofore observed that the elasticity of the terms of the definition precludes the formulation of any rigid rule and requires the "application of a flexible judgment" to the peculiar facts and circumstances of each case as it arises. (See *Appeal of Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32, and *Appeal of Oliver-Wright-Rainey Co.*, 2 B. T. A. 561.) We have also pointed out that "the concept underlying the whole theory of personal service corporations was to give relief to those corporations, the income of which was primarily attributable to the personal and individual activities of the principal stockholders" (*Appeal of Hanley-Ried Co.*, 2 B. T. A. 315, 318), and that "the purpose of the statute was to grant a privilege to certain corporations whose activities consisted of the rendition of personal services, by its stockholders, for money." (*Appeal of William Morris Enterprises, Inc.*, 1 B. T. A. 946, 950.)

A photo-engraving is not a commodity or article of merchandise in any true sense of the term, nor was petitioner a manufacturer or producer or dealer in merchandise. In dealing with the petitioner, customers were not purchasing a commodity or an article of merchandise, as those terms are ordinarily understood, but were engaging the services which the petitioner offered for sale. Photo-engraving requires the exercise of a high degree of artistic skill, chemical knowledge, optical judgment and individual discretion of the draftsman. It is for this service that the customer contracts. The physical material upon which the service is performed has little or no independent value, but is merely the means through which the desired service is rendered to the customer. The engraving is of value only to him for whom it has been especially prepared and has no value as a commodity or article of merchandise for general trade. In dismissing an indictment under the anti-trust laws of New York, charging a combination to affect the price of articles and commodities in common use, the court said:

Under no definition that I have seen can a photo-engraving be called a commodity. It is simply a substitute for wood engraving or steel engraving, or engraving on stone, which formerly performed the service now rendered by the photo-engraving.

No one has alleged that a photo-engraving is ever seen on sale in any shop in any place.

The only cases which refer or even remotely relate to photo-engravings are those in which it was held that lithographs—which resemble photo-engravings— are not commodities.

Photo-engraving is rather to be regarded as an art or a process. The defendants are not prohibited by the statute from dictating the terms on which they shall render their services, since their labors cannot in any proper sense be said to result in the production or sale of an article or commodity in common use. *People* v. *Epstean*, 170 N. Y. Supp. 68.

In a case involving a contract for lithographing, which, as the New York Court observes, is similar to photo-engraving, it was said:

The contract to manufacture and furnish articles for the especial, exclusive and peculiar use of another, with special features which he requires, and which render them of value to him but useless and unsalable to others, articles whose chief cost and value are derived from the labor and skill bestowed upon them and not from the materials on which they are made, is a contract for work and labor and not a contract of sale. *Beck Lithographing Co.* v. *Colorado Milling, etc.*, 52 Fed. 700.

It seems clear, therefore, that petitioner's business is an art requiring artistic skill and discretion and that Cocks and Clark were selling and offering for sale their personal services. They were not manufacturing or merchandising. Its customers do not seek merchandise or a commodity of exchangeable value, but desire a special service in satisfaction of their own peculiar requirements, for which they are willing to pay the stipulated price.

The evidence here discloses that the two owners of the corporation were highly skilled engravers, considered as the best in that part of the country, and personally performed or supervised all work of the corporation. They transacted all business with customers and it was solely upon them that customers relied for advice and suggestions and satisfactory rendition of the services desired. No salesmen or solicitors were employed and all business received was wholly attributable to the reputation of the two owners as skilled engravers of the highest class. No capital was employed in the business except that represented by the tools, machinery and equipment and the supply of materials used. The employees were a janitor, errand boy, bookkeeper, stenographer, assistant shopmen, and artists. The assistant workmen were not skilled engravers, could not complete any piece of work without the supervision, direction and assistance of the two owners, and none of the employees came in contact with customers or directly produced or attracted business to the petitioner.

The testimony of the revenue agent, who, after examination of petitioner's returns, allowed personal service classification, was that—

Cocks and Clark were the sole life and body of this business. * * * Without these men the business would not have existed very long, * * * the bulk of their business was due to their personal ability and efforts.

The statute requires only that petitioner's income shall be " ascribed primarily to the activities of the principal owners or stockholders." Strictly speaking, every employee of a corporation contributes something to producing its income and unless full force be given to the word " primarily " no corporation could be given personal service classification if it employed any assistants, however minor their duties. We do not believe the statute contemplated such a narrow construction. The word " primarily " was used advisedly and should be construed reasonably. In the face of the above testimony and the testimony of other witnesses who were attracted to petitioner because of the superior skill and ability of Cocks and Clark and in order to receive their advice and counsel in the work, we believe it clear that the income of this corporation was to be ascribed primarily to the activities of Cocks and Clark and that they were engaged in the active conduct of its affairs.

It would seem no less clear that capital was not a material factor in the production of its income. All the capital employed consisted of the materials and equipment with which petitioner worked in rendering the services purchased by its customers. This equipment was not a material income-producing factor in the sense contemplated by the Act. It was no more than the tools employed in performing personal services. Nor were the materials an income-producing factor for as such they were of little or no value and certainly were not the things for which customers paid. These materials were noth-

ing more than the medium through which the petitioner transferred to its customers the skilled services of Cocks and Clark, which was the real thing contracted and paid for. Our reasoning in *Appeal of Rhoades, Brownson & Kampman, Inc.*, 2 B. T. A. 194, 198, is equally applicable here:

> These tools and equipment, which constitute practically all the capital of the company, are not unlike the kit of tools carried by every mechanic in the conduct of his business; they differ little in general from the equipment of the physician or surgeon in carrying on his profession, or the office furniture and library of the lawyer; and we are of the opinion that such funds as any mechanic, physician, surgeon or lawyer has invested in the tools and equipment necessary for his business are not such a form of capital as to be considered under the Revenue Act * * * as a material factor in producing earnings and profits.

Nor can it be said that the petitioner was " trading as a principal " within the intendment of the Act. It was not the services of the employees that the petitioner sold or traded in, for none of them were skilled engravers capable of completely performing the work from which its income was derived. These employees were engaged in separate phases of .the detail work entering into the finished object and were merely assistants to Cocks and Clark in the performance of physical details incident to completing for delivery the service desired. These employees were not known to petitioner's customers and none of its business was acquired by reason of their independent services or reputations as engravers. That they were of material assistance in the rendition of the services performed by Cocks and Clark and that because of such assistance a greater volume of business could be done are undoubtedly true, but that does not necessarily demonstrate trading as a principal. Congress certainly did not intend such a narrow limitation as would exclude from personal service classification every corporation, otherwise satisfying the requirements of the Act, in which the owners did not themselves physically perform every detail of the work. We can not assume that Congress intended to grant a privilege, and, in the act of granting, imposed a limitation which would for all practicable purposes revoke the very privilege granted. As we said in *Appeal of Moser & Wacker, Inc.*, 4 B. T. A. 1021, 1025:

> Every lawyer, physician or engineer who uses the services of an employee or who has a brief typed by a public stenographer, a test made by a chemist, or a plan traced by a draughtsman, is in this sense " trading " in the services of other people. Would it be seriously contended that such " trading " was contemplated by section 200? We think not.

In *Appeal of William Morris Enterprises, Inc., supra*, we said:

> When a client goes to a lawyer, a doctor or an engineer, he retains his services. It may be that a large part of the work done under the retainer will be performed by a clerk, a nurse or a draftsman, in the employ of the professional man, but it is *his* ability, skill, or judgment that is desired, whether exercised

directly or by way of supervision. It is *his* reputation that attracts patrons. It is *he* who will be held responsible for the quality of the services rendered.

And so it is in the instant appeal. Customers sought the services of 'Cocks and Clark and it was their ability, skill and judgment that was desired, whether exercised directly or by supervision. It was their reputation that attracted patrons and they were responsible for the quality of the services rendered. In the case of *Westermann & Pagano, Inc.*, 2 B. T. A. 1308, personal service classification was granted though it appeared that at times the corporation employed as many as 25 copy artists, whose aggregate salaries in the taxable year amounted to $80,593.88. In that case, as in the present, customers were attracted solely by the skill and reputation of the stockholders.

We say here, as we did in *Appeal of Rhoades, Brownson & Kampman, Inc., supra:*

The record in this case is clear and contains convincing evidence that the taxpayer as a corporate organization * * * was engaged only in selling the services of its members in the performance of a business requiring special qualifications as to skill, experience, and knowledge of a .technical character, and that the corporate form of organization must have been adopted by the members of the taxpayer company simply as a matter of convenience in organizing and selling the personal services of its members.

We have carefully examined the cases cited by respondent and find that each of them is clearly distinguishable upon its facts from the instant appeal.

Petitioner complies with all the requirements of a personal service corporation imposed by the Revenue Acts of 1918 and 1921 and respondent erred in denying it classification as such. See *Bryant & Stratton Commercial School, Inc., supra; Westermann & Pagano, Inc., supra; Moser & Wacker, Inc., supra;* and *Innes-Behney Optical Co.*, 7 B. T. A. 982.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*